KOBAYASHI SUGITA & GODA, LLP

JOSEPH A. STEWART          7315-0
STEPHEN G.K. KANESHIRO  11295-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
jas@ksglaw.com
sgk@ksglaw.com

Attorneys for Plaintiff
 BOARD OF WATER SUPPLY,
 CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| BOARD OF WATER SUPPLY, CITY AND COUNTY OF HONOLULU, | CIVIL NO. |
|---|---|
| Plaintiff, | COMPLAINT |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**COMPLAINT**

I.     **INTRODUCTION**

Plaintiff BOARD OF WATER SUPPLY, CITY AND COUNTY OF HONOLULU ("BWS"), by and through its attorneys, Kobayashi Sugita & Goda LLP, and pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., seeks damages because of Defendant UNITED STATES OF AMERICA's

("Defendant") negligence, conduct, and statements related to multiple punctures of the BWS's 42-inch water transmission main located in Moanalua ("Water Main").

## II.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the BWS's claims arise under the laws of the United States. This Court also has jurisdiction to grant relief in this action pursuant to 28 U.S.C. § 1346(b)(1), as the BWS brings claims under the FTCA.

2. Venue is proper in the District of Hawaii under 28 U.S.C. § 1402(b) because the events giving rise to these claims occurred in this judicial district.

3. On September 14, 2021, the BWS timely filed an administrative claim ("FTCA Claim") with the United States Army Corps of Engineers ("USACE") for multiple punctures of the Water Main that occurred on June 18, 2021.

4. By letter dated January 31, 2022, USACE denied the BWS's FTCA Claim.

5. This action is timely under the FTCA, 28 U.S.C. § 2401(b), because it was presented to the appropriate federal agency within two years of accrual and was filed in this Court within six months of the mailing of the agency's denial of the administrative claim.

### III. PARTIES

6. The BWS is a semi-autonomous agency of the City and County of Honolulu that manages Oahu's municipal water resources and distribution system.

7. The BWS operates the Water Main, which runs by the Fort Shafter On-Ramp of the H-201 Moanalua Freeway.

8. USACE is an agency of Defendant.

9. Under the FTCA, Defendant is liable for injury caused by the negligent and wrongful acts and omissions of its employees while acting within the course and scope of their office or employment, under the circumstances where Defendant, if a private person, would be liable to the BWS.

### IV. STATEMENT OF FACTS

#### A. The Punctures

10. On June 18, 2021, a USACE project engineer reported to the BWS that the Water Main was punctured during the course of underground drilling with a powered Horizontal Directional Drill for a USACE project.

11. The BWS learned that the drilling was performed as part of the USACE Fort Shafter Command and Control Expansion Project ("Project").

12. Upon information and belief, Hensel Phelps Construction ("HP") was the general contractor for the Project.

13. Upon information and belief, USACE provided the Project's construction plans and specifications to HP.

14. Upon information and belief, the Project's construction plans and/or specifications involved underground drilling near Fort Shafter On-Ramp of the H-201 Moanalua Freeway.

15. Under Hawaii law, before beginning work, an excavator generally must contact the state One-Call Center to request that utilities provide information, or mark, their underground installations.

16. The excavator must also determine the exact location of such subsurface installations before using any power drilling equipment.

17. However, upon information and belief, neither the USACE nor HP contacted the One-Call Center.

18. No visible markings at the worksite identified the Water Main's location.

19. Upon information and belief, neither the USACE nor HP determined the exact location of the Water Main before using the Horizontal Directional Drill.

20. The BWS was also not notified prior to Project commencement, as it requested.

21. Upon information and belief, HP subcontracted the Project work involving underground drilling near Fort Shafter On-Ramp to Frank V. Coluccio Construction Company ("FVCCC").

22. Upon information and belief, on June 18, 2022, HP and/or FVCCC was operating the Horizontal Directional Drill to perform the Project according to its plans when the drill struck and punctured the Water Main, causing two ruptures.

23. Upon information and belief, at all times material to this action, Defendant supervised, managed, and/or exerted control over HP's performance of the Project, including HP's day-to-day operations.

24. On June 23, 2021, several USACE project engineers were present when the BWS sent a camera into the Water Main to inspect the damage. Also in attendance were HP employees.

25. On July 26, 2021, USACE Project Engineer Todd Barnes ("Mr. Barnes") emailed the BWS to ask about the potential costs of repairing the punctures. In the same email, according to advice from its Office of Counsel, Mr. Barnes instructed the BWS to file an FTCA claim with the USACE because the BWS and USACE did not have a contractual relationship. These instructions included filling out and submitting to the USACE a Standard Form 95.

26. On August 25, 2021, Mr. Barnes again emailed the BWS asking for a cost estimate. Mr. Barnes represented that if he had "rough estimates" from the BWS, "[i]t would really assist me in my determination of the financial way forward for us."

27. The same day, the BWS responded, stating that it would get an update on the cost estimates.

28. Ultimately, the BWS sent the rough cost estimate to the USACE.

29. On September 14, 2021, the BWS submitted to USACE a Standard Form 95, thereby filing the FTCA Claim as the USACE had instructed. On the same day, the BWS asked Mr. Barnes where to mail a hard copy of the FTCA Claim.

30. On September 15, 2021, Mr. Barnes confirmed to the BWS that he had downloaded the file. Mr. Barnes also provided the address for the BWS to mail the hard copy of the FTCA Claim.

31. On October 14, 2021, Eric Marshall ("Mr. Marshall"), another USACE Project Engineer, emailed the BWS to state that the USACE was drafting a response to the BWS's claim. However, the project engineer also wanted to speak with the BWS to discuss the actions USACE was taking.

32. In October, 2021, the BWS spoke with Mr. Marshall to discuss USACE's actions regarding the Water Main punctures, and the USACE's reimbursing the BWS for the cost of Water Main repairs.

33. On January 31, 2022, the BWS received a final denial of claim letter from the USACE. The letter claimed that USACE's legal team purportedly had

"explored every possible solution for resolving this issue" in "look[ing] for appropriate financial resolution."

34. Despite the fact that the USACE reported the Water Main damage to the BWS, repeatedly requested repair cost estimates and other information from the BWS, and directed the BWS to file the FTCA Claim with the USACE, the USACE nevertheless denied the FTCA Claim.

35. The denial was premised on the assertion that a USACE employee did not damage the Water Main; instead, the USACE claimed for the first time that "it appears the tortfeasor is an independent contractor." The denial letter then identified the independent contractor as HP.

36. This denial letter surprised the BWS because, up until that point, the USACE's statements and conduct indicated that the USACE had acknowledged that it was responsible for the punctures, whether by providing defective Project plans, improperly controlling or managing the day-to-day operations including Project drilling, failing to ensure that underground utilities were located and avoided, or otherwise.

37. The USACE's statements and conduct also directed the BWS to rely on the fact that the USACE would be reimbursing the BWS once the total cost was determined and the FTCA Claim was submitted.

38. At no point prior to the BWS's receipt of the denial letter did the USACE indicate that it questioned its liability. To the contrary, at all times relevant, it specifically directed the BWS to submit its claim under the FTCA.

### B. Defendant Is Estopped from Asserting that it Is Not Liable for the Cost of Water Main Repairs.

39. Defendant is estopped from asserting that it is not liable for reimbursing the BWS for the cost of repairing the Water Main punctures because the damage was caused by an independent contractor.

40. The elements of equitable estoppel are: (1) Defendant knew the facts, (2) Defendant intended that its conduct will be acted on (or acted such that the party invoking estoppel has a right to believe it was so intended), (3) the BWS was ignorant of the true facts, and (4) the BWS detrimentally relied on the Defendant's conduct.

41. To the extent that the additional government agency estoppel elements apply (without conceding that they do), (5) the agency engaged in affirmative conduct going beyond mere negligence; and (6) the public's interest will not suffer undue damage as a result.

42. Here, Defendant knew the facts regarding the operator(s), supervisor(s), and person(s) responsible for the Water Main punctures because, upon information and belief, Defendant's supervisory personnel were present at the

time of the punctures, and/or were managing, supervising, and/or controlling HP's operations.

43. Defendant also knew the facts of its contractual arrangement with HP, including which party maintained control over day-to-day operations, because it was a party to that contract and was involved with the contract's performance.

44. Defendant intended that the BWS act on its instructions to the BWS to seek reimbursement from the USACE for the Water Main punctures by filing the FTCA Claim because it expressly instructed the BWS to do so.

45. Defendant also acted such that the BWS was entitled to believe that Defendant was liable for the Water Main punctures for reasons including (1) directly contacting the BWS to report the punctures, as Hawaii Revised Statutes ("HRS") § 269E-12(e)–(f) require excavators to do upon damaging a subsurface installation; (2) repeatedly inquiring about the BWS's potential costs of repairing the punctures; (3) instructing the BWS to file an FTCA claim with the USACE to obtain reimbursement for the BWS's repair costs; (4) failing to inform the BWS prior to its final FTCA Claim denial that an independent contractor punctured the main and so the USACE was not liable under the FTCA.

46. The BWS did not know the true facts regarding the operator(s), supervisor(s), and person(s) responsible for the Water Main punctures because it

had no personnel present at the time of the punctures, and it relied on the information from the USACE, including its direction to file the FTCA Claim.

47. Notably, the USACE, and not HP or FVCCC, reported the punctures under HRS § 269E-12(e)–(f). As a result, the BWS reasonably believed that the USACE was the excavator, or was acknowledging its liability for the conduct of the excavator.

48. The BWS also did not know the facts of Defendant's contractual arrangement with HP, including which party maintained control over day-to-day operations, because it was not a party to that contract and did not receive a copy of that contract, and it relied on the information from the USACE, including its direction to file the FTCA Claim.

49. The BWS detrimentally relied on the Defendant's conduct, including by spending time and resources preparing and submitting the FTCA Claim, foregoing seeking reimbursement from HP or FVCCC thereby delaying any compensation from those entities, spending time and resources participating in the USACE's investigation prompted by the FTCA Claim, and spending time, resources, and money in filing this action.

50. The USACE engaged in affirmative conduct going beyond mere negligence, including affirmatively (1) contacting the BWS to report the punctures; (2) repeatedly inquiring about the BWS's potential costs of repairing the punctures;

and (3) instructing the BWS to file an FTCA claim with the USACE to obtain reimbursement for the BWS's repair costs.

51. The public's interest will not suffer undue damage as a result because, if HP was the true tortfeasor, Defendant can obtain indemnification or contribution from it.

### V.     CAUSE OF ACTION – NEGLIGENCE

52. The BWS incorporates the foregoing paragraphs as if set forth fully herein.

53. Under Hawaii law, a negligence claim requires (1) a duty recognized by law that the defendant owed to the plaintiff, (2) a breach of the duty, (3) that the defendant's breach was a substantial factor in bringing about the plaintiff's harm, and (4) actual damages.

54. Defendant has a duty to exercise reasonable care when taking the following actions related to the Project; (1) selecting the designer; (2) instructing the designer for its project to perform the design work; (3) selecting the contractor; (4) providing the Project construction plans to its contractor; and (5) supervising the work of its contractor in the field via its personnel on site during construction.

55. Defendant breached these duties, which ultimately resulted in the punctures to the Water Main while the contractor was performing the Project according to the construction plans.

56. Defendant also has a duty to exercise reasonable care when supervising, managing, or controlling the day-to-day operations of its contractors.

57. Defendant breached this duty by failing to reasonably supervise, manage, or control the day-to-day operations of HP.

58. Hawaii law also imposes a duty on excavators to exercise reasonable care when excavating in the vicinity of a subsurface installation, such as the Water Main. Haw. Rev. Stat. § 269E-12(a).

59. This includes the duty to determine the exact location of subsurface installations in conflict with the excavation before using any power equipment. *Id.* at (b).

60. Here, Defendant injured the Water Main when the Water Main was punctured on June 18, 2021 with a Horizontal Directional Drill under its operation, direction, supervision, and/or control.

61. Defendant failed to exercise reasonable care, and/or failed to reasonably ensure that HP exercised reasonable care, in determining the exact location of the Water Main before using the Horizontal Directional Drill to excavate in the vicinity of the Water Main.

62. Defendant failed to exercise reasonable care, and/or failed to reasonably ensure that HP exercised reasonable care, in excavating in the vicinity of the Water Main.

63. Defendant failed to exercise reasonable care in to avoid damaging the property of the BWS.

64. Defendant failed to exercise reasonable care in ensuring that its agents/contractors comply with all applicable statutory provisions.

65. These failures were substantial factors in the Water Main being punctured multiple times.

66. As discussed above, Defendant also estopped from asserting that the Water Main damage was not caused by a USACE employee.

67. As a result, the BWS was forced to spend at least $852,753.13 to repair the punctures.

68. Defendant is therefore liable to the BWS for negligence.

WHEREFORE, the BWS respectfully requests a judgment against Defendant for the costs incurred by BWS for the repairs, reasonable and necessary attorneys' fees and costs, and any such other relief as this Court deems just and appropriate.

Dated: Honolulu, Hawaii, July 29, 2022.

                                               */s/ Joseph A. Stewart*
                                               JOSEPH A. STEWART
                                               STEPHEN G.K. KANESHIRO

                                               Attorneys for Plaintiff
                                                BOARD OF WATER SUPPLY,
                                                CITY AND COUNTY OF HONOLULU